UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARIO D. JONES,<br><br>　　Plaintiff,<br><br>v.<br><br>STATE OF TENNESSEE DEPARTMENT<br>OF CORRECTION et al.,<br><br>　　Defendants. | Case No. 3:20-cv-00340<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:　　The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

This action is referred to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 5.) Before the Court is Defendants Tennessee Department of Correction (TDOC), Parole Officer Sonia Jones (S. Jones), and Parole Hearing Officer Amber Lineberry's motion to dismiss pro se Plaintiff Mario D. Jones's complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim on which relief can be granted under Rule 12(b)(6). (Doc. No. 25.) Jones has responded in opposition to the defendants' motion. (Doc. No. 28.) For the reasons that follow, the Magistrate Judge will recommend that the defendants' motion to dismiss be granted.

**I.     Background**

    **A.     Factual Background**[1]

In 2013 or 2014, Jones filed a civil rights complaint with the Department of Justice (DOJ) alleging that public officials falsified court documents and issued an illegal warrant for his arrest, resulting in his wrongful conviction and false imprisonment, among other alleged wrongs, "in the *State of Tennessee v. Jones* case #M-03-628."[2] (Doc. No. 1, PageID# 8, ¶ 16.) Jones states that this case was to have been dismissed "in 2004 when the Federal Government intervened and back in 2007." (*Id.*) Jones states that the DOJ instructed him and his attorneys "to report to the FBI with all evidence" supporting his claims of public corruption. (*Id.*) "On or around November 22, 2017, Jones reported to the FBI's Field[ ] Office" in Atlanta, Georgia, for an interview with a federal agent. (*Id.*) After the interview, agents informed Jones that their system showed a parole violation warrant for his arrest in Tennessee. (Doc. No. 1.) Jones states he later discovered that "Parole Officer Sonia Jones intentionally [and] deliberately[ ] falsified [and] fabricated police official documents[ ] and forged signatures in [an] attempt to initiate a bogus warrant for [his] arrest" and "someone hacked into a Federal system and issued a bogus warrant for [his] arrest, when in fact no Judge signed nor issued the parole violation warrant." (*Id.* at PageID# 9, ¶ 17.)

Jones was arrested on the parole violation warrant and transported from the FBI's Atlanta field office to the DeKalb County Jail in Decatur, Georgia. (Doc. No. 1.) "On or around December 5, 2017, Jones was transported by the Tennessee Fugitive Task Force from [the] DeKalb County Jail to [the] Bledsoe County Correctional Complex" (BCCX) in Pikeville, Tennessee. (*Id.* at

---

[1]     The facts in this section are drawn from Jones's complaint (Doc. No. 1) and taken as true for purposes of resolving the pending motion to dismiss. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

[2]     Jones does not provide further identifying information for this case.

PageID# 9, ¶ 16.) In late December 2017, Jones was transferred to the Lois M. DeBerry Special Needs Facility (DSNF) in Nashville, Tennessee. (Doc. No. 1.)

Jones alleges that he was tortured during his incarceration. (*Id.*) He "experienced exruciati[ng] pain which started every night around 9:00pm." (*Id.* at PageID# 11, ¶ 22.) He alleges that a radio transmitter device implanted in his mouth during "a root canal done by a dentist in Atlanta" before his incarceration "caused severe headaches and chest pains." (*Id.*) Jones states that, between June and July 2018, "about 20–30 nurses quit all at one time" because they "did not want to be involved nor participate in the illegal torture that was done on [him] at the prison." (*Id.*) Jones also alleges that he was forced to "work[ ] for [$0.]17 an hour in the kitchen" which he "considered slavery." (*Id.* at PageID# 10, ¶ 20.)

"On or around March 1, 2018, Jones had a parole probable cause hearing." (*Id.* at PageID# 10, ¶ 19.) Jones "informed Parole Hearing Officer Amber Li[ne]berry that his confinement was illegal" and that he had a pending case with the DOJ. (*Id.*) Lineberry told Jones that "[s]omeone sent the Parole Board information pertaining to this matter" and that she would reschedule the hearing to "sort everything out." (*Id.*) On or about June 4, 2018, the State of Tennessee appointed Defendant attorney Jerry Caleb Cassell to represent Jones in his parole revocation proceedings. (Doc. No. 1.) "Cassell was given document[s] that [h]e knew were fabricated [and] forged" but "refused to report this evidence of criminal activities to the proper authorities." (*Id.* at PageID# 10, ¶ 21.) During numerous subsequent hearings, "Jones repeatedly asked Hearing Officer Amber Li[ne]berry for that information that was sent to the Parole Board by the Federal Government, and a copy of his parole violation warrant[,]" but "Jones never received any of those items requested." (*Id.* at PageID# 10, ¶ 19.) Jones states that Defendant Shuntae Davidson gave him "the supposed[ ] violation warrant documentation[ ]" "before the first

3

parole violation hearing . . . in 2018[,]" but "it was not the actual parole violation warrant . . . itself." (*Id.* at PageID# 11, ¶ 25.) Jones wrote to Defendant TDOC twice in 2019, asking for a copy of the parole violation warrant and invoking the Tennessee Public Records Act, but never received a response. (Doc. No. 1.) Jones alleges that he "never appeared before a Judge to answer to the supposed[ ] violation warrant." (*Id.* at PageID# 10, ¶ 19.)

Jones was released from custody on April 23, 2019. (Doc. No. 1.) Jones alleges that, "[a]ccording to the Laws of Tennessee, it is illegal for a prison to release an inmate without an Identification Card." (*Id.* at PageID# 12, ¶ 28.) He was not issued an identification card, however, because a prison guard said that TDOC's system showed "some kind of Federal jurisdiction order that would not allow the guard to give Jones an Identification Card." (*Id.*) Jones states that "[t]his confirms [his] incarceration was illegal." (*Id.*) Parole Officer Brandon Kelley told Jones that he could not leave the county or the State of Tennessee, which Jones terms "a hostage measure." (*Id.* at PageID# 12, ¶ 29.) Jones concludes that the defendants "committed conspiracy of kidnapping, torture, hostage [*sic*] with the intent to keep [Jones] from an Estate/Trust he inherited in Mississippi." (*Id.* at PageID# 13, ¶ 30.)

### B. Procedural History

Jones filed his complaint against Defendants TDOC, the Tennessee Board of Parole (TBOP), DSNF, BCCX, S. Jones, Lineberry, Davidson, and Cassell on April 21, 2020. (Doc. No. 1.) Count One of Jones's complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68. (*Id.*) Count Two asserts claims under 42 U.S.C. § 1983, including violations of the Fourteenth Amendment's Equal Protection Clause. (*Id.*) Jones seeks monetary damages and injunctive relief. (*Id.*)

On August 7, 2020, Defendants TDOC, S. Jones, and Lineberry filed a motion to dismiss Jones's complaint.[3] (Doc. No. 25.) TDOC argues that it is entitled to Eleventh Amendment sovereign immunity and that Jones's claims against it should therefore be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1). (Doc. No. 26.) S. Jones and Lineberry argue that the facts in Jones's complaint are insufficient to state any claims for relief against them and should be dismissed under Rule 12(b)(6). (*Id.*) Lineberry also argues that she is entitled to judicial immunity from Jones's § 1983 claims for damages. (*Id.*) Jones filed a response in opposition to the defendants' motion, arguing that TDOC is not entitled to sovereign immunity and that his complaint adequately states claims for relief. (Doc. No. 28.) The defendants did not file an optional reply.

## II.     Legal Standards

### A.     Rule 12(b)(1)

Federal courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Article III of the Constitution extends the federal judicial power "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States," and several other categories of cases not at issue here.[4] U.S. Const. art. III, § 2, cl. 1; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Congress has also granted

---

[3]     Defendant Cassell answered Jones's complaint on June 19, 2020. (Doc. Nos. 14, 15.) Defendants TBOP, DSNF, BCCX, and Davidson filed a motion to dismiss the complaint on January 8, 2021 (Doc. No. 40), to which Jones has responded in opposition (Doc. No. 43). The Court will address that motion by separate report and recommendation.

[4]     For example, cases involving ambassadors, public ministers, and consuls and cases between two states or in which the United States is a party. U.S. Const. art. III, § 2, cl. 1.

federal courts diversity jurisdiction over civil actions in which the parties are citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. Whether the Court has subject-matter jurisdiction is a "threshold" question in any action. *Am. Telecom Co. v. Republic of Leb.*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "'[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

The party asserting subject-matter jurisdiction bears the burden of establishing that it exists. *Id.* at 104. A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 816–17 (6th Cir. 2017) (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). A factual attack challenges the allegations supporting jurisdiction, raising "a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Id.* at 817 (quoting *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330). District courts reviewing factual attacks have "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

### B. Rule 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded

factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Jones proceeds pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III. Analysis

#### A. Sovereign Immunity

TDOC argues that, as a state agency, it is entitled to sovereign immunity under the Eleventh Amendment from Jones's claims for monetary damages and injunctive relief. (Doc. No. 26.) Jones relies on *Abriq v. Hall*, 295 F. Supp. 3d 874 (M.D. Tenn. 2018), for the proposition that "[t]he government does *not* retain sovereign immunity for injuries arising out of any and all false imprisonments, only those arising pursuant to a mittimus from a court." (Doc. No. 28, PageID# 106, ¶ 10 (quoting *Abriq*, 295 F. Supp. 3d at 883).)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Sixth Circuit has held that Eleventh Amendment sovereign immunity extends to state agencies, including TDOC. *See Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 454 (6th Cir. 2012) (holding that "[TDOC] and the prisons under its control are agencies of the state of Tennessee and are entitled to Eleventh Amendment immunity from suit for damages" (first citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); and then citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984))). "There are three exceptions to a state's sovereign immunity: (1) when the state has consented to suit; (2) when the exception set forth in *Ex parte Young*, 209 U.S. 123 (1908) applies; and (3) when Congress has clearly and expressly abrogated the state's immunity." *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016). The Court finds that none of these exceptions applies to Jones's claims against TDOC.

### 1. State Waiver of Sovereign Immunity

The Tennessee Constitution provides that Tennessee has sovereign immunity from claims brought against it unless the State Legislature expressly waives that immunity. Tenn. Const. art. 1, § 17. The State Legislature codified this provision in Tenn. Code Ann. § 20-13-102, which bars suits against the State of Tennessee in both state and federal court unless the State Legislature has expressly waived that immunity. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986); *Woolsey v. Hunt*, 932 F.2d 555, 565 (6th Cir. 1991). The Sixth Circuit has held that Tennessee has not waived its immunity to claims brought under § 1983. *See Berndt*, 796 F.2d at 881. Jones has not cited any authority indicating that Tennessee has waived its immunity to RICO claims, and this Court is not aware of any such waiver.

### 2. Congressional Abrogation of Sovereign Immunity

"Section 5 of the Fourteenth Amendment . . . grant[s] Congress the authority to abrogate the States' sovereign immunity." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000). A federal statute may therefore abrogate the states' sovereign immunity if "Congress unequivocally expressed its intent to abrogate that immunity" while "act[ing] pursuant to a valid grant of constitutional authority." *Id.* at 73. The Supreme Court has held that § 1983 did not abrogate states' immunity to suits brought under it. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–67 (1989); *see also Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). The Sixth Circuit has held that Congress did not abrogate states' sovereign immunity under RICO. *See Chaz Constr., LLC v. Codell*, 137 F. App'x 735, 743 (6th Cir. 2005) (holding that "RICO does not arise under § 5 of the Fourteenth Amendment" and thus is not a "law wherein Congress abrogated state sovereign immunity"); *see also Bair v. Krug*, 853 F.2d 672, 674–75 (9th Cir. 1988) (holding that appellants had not argued or proffered any authority to support finding that Congress abrogated states' sovereign immunity under RICO).

### 3. *Ex Parte Young* Exception

The *Ex Parte Young* exception allows suits for prospective injunctive relief against state officials acting in violation of federal law. *See Boler*, 865 F.3d at 412 (quoting *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)). While Jones's complaint requests injunctive relief (Doc. No. 1), the *Ex Parte Young* exception applies only to suits against state officials in their official capacities and "does not allow plaintiffs to bring claims against states or state agencies themselves." *Brennan v. Mays*, No. 3:19-cv-00948, 2020 WL 6900138, at *3 (M.D. Tenn. Nov. 23, 2020) (Crenshaw, C.J.) (citing *Puckett*, 833 F.3d at 598); *see also Graham*, 473 U.S. at 167 n.14 ("Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought.").

TDOC is therefore entitled to Eleventh Amendment sovereign immunity from Jones's claims. None of the cases Jones cites in opposition provides otherwise. The plaintiff in *Abriq v. Hall* brought § 1983 claims against the Metropolitan Government of Nashville and Davidson County, Tennessee, not TDOC itself. *Abriq*, 295 F. Supp. 3d at 876–77. But the Supreme Court has held that Eleventh Amendment sovereign immunity "does not extend to counties and similar municipal corporations." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). The *Abriq* case therefore only addressed immunity under the Tennessee Governmental Tort Liability Act and not the Eleventh Amendment. *See Abriq*, 295 F. Supp. 3d at 883. Jones also cites *Vick v. Core Civic*, No. 1:18-cv-00003, 2020 WL 1670742, at *2 (M.D. Tenn. Mar. 6, 2020), *report and recommendation adopted by* 2020 WL 1666598 (M.D. Tenn. Apr. 3, 2020). But *Vick* does not support Jones's argument—in that case, the Court found that TDOC *was* entitled to Eleventh Amendment sovereign immunity from the plaintiff's § 1983 claims and granted TDOC's motion to dismiss.

The Court therefore finds that TDOC is entitled to Eleventh Amendment sovereign immunity and Jones's claims against it should be dismissed.

### B. RICO Claims

RICO imposes criminal and civil liability on "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). RICO defines "racketeering activity" to include, among other things, "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . ., which is chargeable under State law and punishable by imprisonment for more than one year[.]" 18 U.S.C. § 1961(1)(A). "A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years of each other." *Heinrich*, 668 F.3d at 409 (citing 18 U.S.C. § 1961(5)). It also requires a showing "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). To plausibly state a RICO conspiracy claim, "plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging 'the existence of an illicit agreement to violate the substantive RICO provision.'" *Heinrich*, 668 F.3d at 411 (quoting *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)).

Jones's complaint alleges that each defendant "has committed acts . . . that violate one or more of the RICO statutes, and . . . worked in collusion with one or more of the others[.]" (Doc.

No. 1, PageID# 7, ¶ 11.) S. Jones and Lineberry argue that Jones's RICO claims against them fail on the merits because he has not adequately alleged a pattern of racketeering activity. (Doc. No. 26.) Specifically, they argue that, even assuming Jones's arrest, transportation, and incarceration constitute kidnapping under Tennessee law, he "has not shown the presence of two or more instances of kidnapping that would constitute [the] predicate offenses needed" to state a RICO claim. (*Id.* at PageID# 95.)

Jones concedes that a RICO violation requires "the commission of at least two predicate RICO offenses[.]" (Doc. No. 28, PageID# 107, ¶ 13.) However, he does not identify any specific allegations in his complaint showing that S. Jones and Lineberry engaged in a *pattern* of kidnapping or other racketeering activity. Instead, he argues, without factual support, that his complaint "meets all of th[e] elements" necessary to plead a RICO claim.[5] (Doc. No. 28, PageID# 107, ¶ 16.) The Court therefore finds that Jones's allegations, liberally construed, do not state plausible RICO violations or RICO conspiracy claims against S. Jones and Lineberry. *See Heinrich*, 668 F.3d at 409, 411. Jones's RICO claims should be dismissed.

---

[5] Jones alleges in a motion to unseal documents that he was "kidnapped" once before on or around June 26, 2009, when he was "taken . . . from jail in Raymond, Mississippi by the Bradley County Sheriff—illegally taken across state line[s and] transported to the Bradley County jail in Bradley County, Tennessee." (Doc. No. 23, PageID# 78.) Even if Jones moved for leave to amend his complaint to include this allegation, his RICO claims against S. Jones and Lineberry would nevertheless fail because he has not pleaded any facts supporting an inference that the kidnappings were related and amount to a continued threat of criminal activity. *See Heinrich*, 668 F.3d at 409. Jones's complaint alleges that RICO's definition of racketeering activity also includes torture and hostage-taking under 18 U.S.C. § 2332b(g)(5)(B). (Doc. No. 1.) While acts indictable under § 2332b(g)(5)(B) can be predicate acts of racketeering activity, *see* 18 U.S.C. § 1961(1)(B), § 2332b only encompasses acts "involving conduct transcending national boundaries" *id.* § 2332b(a)(1), which Jones has not alleged here.

### C. § 1983 Claims

Section 1983 provides a civil cause of action to any person deprived of federal rights by a person acting under color of state law. 42 U.S.C. § 1983. "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." *Green v. Throckmorton*, 681 F.3d 853, 859–60 (6th Cir. 2012). Jones alleges in Count Two of his complaint that the "[d]efendants' conduct violated [his] . . . rights secured by the Constitution and laws of the United States, including equal protection" under the Fourteenth Amendment. (Doc. No. 1, PageID# 13, ¶ 32.) His response in opposition to the defendants' motion to dismiss argues that "the complaint sets forth a valid cause of action as it relates to the Claim For Conspiracy To Violate His Constitutional Rights and For Equal Protection." (Doc. No. 28, PageID# 108, ¶ 21.) The Court therefore construes Jones's § 1983 claims against S. Jones and Lineberry as equal protection and conspiracy claims.[6]

#### 1. Claims Against S. Jones

The only allegation in the complaint regarding S. Jones is that she "intentionally [and] deliberately[ ] falsified [and] fabricated police official documents[ ] and forged signatures in [an] attempt to initiate a bogus warrant for Jones['s] arrest." (Doc. No. 1, PageID# 9, ¶ 17; *see also id.* at PageID# 11, ¶ 25 ("Sonia Jones initiated a bogus parole violation warrant through fraudulent [and] forged police official documents.").) Jones alleges that the "parole violation warrant issued on August 28, 2017" (*id.* at PageID# 12, ¶ 27), and he was arrested "[o]n or around November 22, 2017" (*id.* at PageID# 8, ¶ 16). S. Jones argues that she is entitled to dismissal of Jones's § 1983

---

[6] The introduction and jurisdiction sections of Jones's complaint also invoke the First Amendment (Doc. No. 1), but Jones has not alleged any facts that could give rise to First Amendment claims against S. Jones or Lineberry. Nor does his response in opposition to the defendants' motion to dismiss argue that he has stated any First Amendment claims under § 1983.

claims against her under Rule 12(b)(6) because he filed his complaint after the relevant statute of limitations passed. (Doc. No. 26.) Jones has not responded to this argument.

"The statute of limitations is an affirmative defense, and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim[.]" *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (first citing Fed. R. Civ. P. 8(c); then citing Fed. R. Civ. P. 8(a); and then citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). Consequently, "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Id.* There is an exception to this general rule, however, when "the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case, . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Id.* (citing *Jones*, 549 U.S. at 215).

Because § 1983 does not specify a limitations period, courts apply "the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. State of Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631,634 (6th Cir. 2007). In Tennessee, the applicable limitations period is one year. *See id.*; *see also* Tenn. Code Ann. § 28-3-104(a)(1). "The date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson*, 510 F.3d at 635. Generally, "the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* In determining when a § 1983 claim accrues, courts look to "'what event should have alerted the typical lay person to protect his or her rights.'" *Id.* (quoting *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)).

Jones alleges that he discovered S. Jones's actions while he was illegally incarcerated on the falsified warrant. (Doc. No. 1.) He alleges he told Lineberry "that his confinement was illegal"

during a hearing on March 1, 2018, and repeatedly asked for "a copy of his parole violation warrant" during subsequent hearings. (*Id.* at PageID# 10, ¶ 19.) The Court therefore finds that Jones's § 1983 equal protection claim against S. Jones accrued no later than March 1, 2018 and that the statute of limitations thus expired on March 1, 2019. Jones did not file his complaint until April 21, 2020. (Doc. No. 1.) His § 1983 equal protection claim against S. Jones is therefore time-barred on the face of his complaint.[7]

Even if Jones had timely filed his complaint, his § 1983 equal protection claim against S. Jones would still fail on the merits. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996) (quoting *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). Jones's complaint broadly alleges that "[t]his is also an action of racial discrimination" (Doc. No. 1, PageID# 2), but he has not pleaded any facts regarding his race or membership in a protected class. His allegation of racial discrimination is therefore conclusory and insufficient to support a reasonable inference that S. Jones intentionally discriminated against him in violation of the Equal Protection Clause. Consequently, Jones's § 1983 equal protection claim against S. Jones should be dismissed.

The Sixth Circuit has held that "[a] claim for civil conspiracy under § 1983 exists only where the plaintiff has established a separate and actionable constitutional injury." *Rapp v.*

---

[7]   S. Jones construes Jones's § 1983 claim against her as a false arrest claim, even though Jones's complaint does not invoke the Fourth Amendment. (Doc. No. 26.) The Supreme Court has held that the statute of limitations for a false arrest claim under § 1983 beings to run at the time of arrest or, if the arrest is followed by criminal proceedings, "at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384, 397 (2007). Jones alleges that he "never appeared before a Judge to answer the supposed[ ] violation warrant." (Doc. No. 1, PageID# 10, ¶ 19.) The statute of limitations for any § 1983 false arrest claim therefore began to run on November 22, 2017, and expired on November 22, 2018.

*Dutcher*, 557 F. App'x 444, 450 (6th Cir. 2014); *cf. Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 769 (6th Cir. 2012) ("[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort." (quoting *Early Detection Ctr., P.C. v. N.Y. Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986))). Because Jones has not adequately alleged a separate constitutional violation against S. Jones, his § 1983 conspiracy claim against her should also be dismissed.

### 2. Claims Against Lineberry

Jones's primary allegations against Lineberry are that she served as his parole revocation hearing officer and he "repeatedly asked [her] for th[e] information that was sent to the Parole Board by the Federal Government, and a copy of his parole violation warrant" but "never received any of those items requested." (Doc. No. 1, PageID# 10, ¶ 19.) Lineberry argues that Jones's claims against her should be dismissed under Rule 12(b)(6) because she is entitled to judicial immunity for her actions as a parole hearing officer and Jones has failed to state any plausible claims for relief against her. (Doc. No. 26.) Jones has not responded to Lineberry's immunity argument. He states only that "the complaint sets forth a valid cause of action as it relates to the Claim For Conspiracy To Violate His Constitutional Rights and For Equal Protection." (Doc. No. 28, PageID# 108, ¶ 21.)

"[A] parole board [member] is entitled to absolute immunity for activities related to 'the execution of parole revocation procedures.'" *Haynes v. Bd. of Paroles Members/Chairman*, No. 3:18-cv-00441, 2018 WL 3426179, at *2 (M.D. Tenn. July 16, 2018) (first alteration in original) (quoting *Wright v. McClain*, 626 F. Supp. 1073, 1074 (W.D. Tenn. 1986)); *see also Wright v. Rockett*, No. 86-5307, 1987 WL 36395, at *1 (6th Cir. Feb. 17, 1987) (holding that parole "hearing officer acted in a capacity functionally comparable to a judge" during revocation hearings and was thus "immune from Section 1983 liability"). Jones alleges that Lineberry was the parole

hearing officer for his "revocation process" and presided over a "probable cause hearing" and "numerous hearings held after." (Doc. No. 1, PageID# 10, ¶¶ 19, 21.) The Court finds that she is therefore immune from Jones's claims for damages under § 1983 and these claims should be dismissed.

However, "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). Because Jones also seeks prospective injunctive relief against Lineberry, the Court's inquiry into Jones's § 1983 equal protection and conspiracy claims against Lineberry must continue. The Court finds that these claims fail on the merits for the same reason as Jones's claims against S. Jones: (1) Jones has not pleaded any factual content to support reasonable inferences that he is a member of a protected class and that Lineberry discriminated against him on that basis; and (2) Jones cannot state a conspiracy claim under § 1983 without plausibly alleging an underlying violation. Jones's § 1983 claims for injunctive relief against Lineberry should therefore be dismissed.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Defendants TDOC, S. Jones, and Lineberry's motion to dismiss (Doc. No. 25) be GRANTED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 1st day of February, 2021.

ALISTAIR E. NEWBERN
United States Magistrate Judge