UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARIO D. JONES,<br><br>    Plaintiff,<br><br>v.<br><br>STATE OF TENNESSEE DEPARTMENT<br>OF CORRECTION et al.,<br><br>    Defendants. | Case No. 3:20-cv-00340<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

### REPORT AND RECOMMENDATION

Defendants the Tennessee Board of Parole (TBOP), Lois M. DeBerry Special Needs Facility (DSNF), Bledsoe County Correctional Complex (BCCX), and Institutional Probation Parole Officer Shuntae Davidson have moved to dismiss pro se Plaintiff Mario D. Jones's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim on which relief may be granted. (Doc. No. 40.) Jones has filed a response in opposition (Doc. No. 43), a motion for leave to amend his complaint under Rule 15(a)(2) (Doc. No. 46), and a proposed amended complaint (Doc. No. 47). The defendants have responded in opposition to Jones's motion to amend (Doc. No. 54), and Jones has filed an untimely reply (Doc. No. 55).

For the reasons that follow, the Magistrate Judge will recommend that TBOP, DSNF, BCCX, and Davidson's motion to dismiss be granted and that Jones's motion to amend be denied in part and granted in part.

## I. Background

### A. Factual Background[1]

In 2013 or 2014, Jones filed a civil rights complaint with the Department of Justice (DOJ) alleging that public officials falsified court documents and issued an illegal warrant for his arrest that led to his wrongful conviction "in the *State of Tennessee v. Jones* case #M-03-628," among other alleged wrongs.[2] (Doc. No. 1, PageID# 8, ¶ 16.) Jones states that the criminal case was to have been dismissed "in 2004 when the Federal Government intervened and back in 2007." (*Id.*) Jones states that, after he filed the complaint, the DOJ instructed him and his attorneys "to report to the FBI with all evidence" supporting his claims of public corruption. (*Id.*)

"On or around November 22, 2017, Jones reported to the FBI's Field[ ] Office" in Atlanta, Georgia, for an interview with a federal agent. (*Id.*) After the interview, agents informed Jones that their system showed an outstanding parole violation warrant for his arrest in Tennessee. (Doc. No. 1.) Jones states he later discovered that "Parole Officer Sonia Jones [(S. Jones)] intentionally [and] deliberately[ ] falsified [and] fabricated police official documents[ ] and forged signatures in [an] attempt to initiate a bogus warrant for [his] arrest" and "someone hacked into a Federal system and issued a bogus warrant for [his] arrest, when in fact no Judge signed nor issued the parole violation warrant." (*Id.* at PageID# 9, ¶ 17.)

Jones was arrested on the parole violation warrant and transported from the FBI's Atlanta field office to the DeKalb County Jail in Decatur, Georgia. (Doc. No. 1.) "On or around December

---

[1] The facts in this section, restated from the Magistrate Judge's report and recommendation regarding Defendants the Tennessee Department of Correction, Parole Officer Sonia Jones, and Parole Hearing Officer Amber Lineberry's motion to dismiss (Doc. No. 45), are drawn from Jones's complaint (Doc. No. 1) and taken as true for purposes of resolving the pending motion to dismiss. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

[2] Jones does not provide further identifying information for this case.

5, 2017, Jones was transported by the Tennessee Fugitive Task Force from [the] DeKalb County Jail to [the] Bledsoe County Correctional Complex" in Pikeville, Tennessee. (*Id.* at PageID# 9, ¶ 16.) In late December 2017, Jones was transferred to DSNF in Nashville, Tennessee. (Doc. No. 1.)

Jones alleges that he was tortured during his incarceration. (*Id.*) He "experienced excruciati[ng] pain which started every night around 9:00pm." (*Id.* at PageID# 11, ¶ 22.) He alleges that a radio transmitter device implanted in his mouth during "a root canal done by a dentist in Atlanta" before his incarceration "caused severe headaches and chest pains." (*Id.*) Jones states that, between June and July 2018, "about 20–30 nurses quit all at one time" because they "did not want to be involved nor participate in the illegal torture that was done on [him] at the prison." (*Id.*) Jones also alleges that he was forced to "work[ ] for [$0].17 an hour in the kitchen" which he "considered slavery." (*Id.* at PageID# 10, ¶ 20.)

"On or around March 1, 2018, Jones had a parole [revocation] probable cause hearing." (*Id.* at PageID# 10, ¶ 19.) Jones "informed Parole Hearing Officer Amber Li[ne]berry that his confinement was illegal" and that he had a pending case with the DOJ. (*Id.*) Lineberry told Jones that "[s]omeone sent the Parole Board information pertaining to this matter" and that she would reschedule the hearing to "sort everything out." (*Id.*) On or about June 4, 2018, the State of Tennessee appointed Defendant attorney Jerry Caleb Cassell to represent Jones in his parole revocation proceedings. (Doc. No. 1.) "Cassell was given document[s] that [h]e knew were fabricated [and] forged" but "refused to report this evidence of criminal activities to the proper authorities." (*Id.* at PageID# 10, ¶ 21.) During numerous subsequent hearings, "Jones repeatedly asked Hearing Officer Amber Li[ne]berry for that information that was sent to the Parole Board by the Federal Government, and a copy of his parole violation warrant[,]" but "Jones never

3

received any of those items requested." (*Id.* at PageID# 10, ¶ 19.) Jones states that Davidson gave him "the supposed[ ] violation warrant documentation[ ]" "before the first parole violation hearing . . . in 2018[,]" but "it was not the actual parole violation warrant . . . itself." (*Id.* at PageID# 11, ¶ 25.) Jones wrote to Defendant the Tennessee Department of Correction (TDOC) twice in 2019, asking for a copy of the parole violation warrant and invoking the Tennessee Public Records Act, but never received a response. (Doc. No. 1.) Jones alleges that he "never appeared before a Judge to answer to the supposed[ ] violation warrant." (*Id.* at PageID# 10, ¶ 19.)

Jones was released from custody on April 23, 2019. (Doc. No. 1.) Jones alleges that, "[a]ccording to the Laws of Tennessee, it is illegal for a prison to release an inmate without an Identification Card." (*Id.* at PageID# 12, ¶ 28.) He was not issued an identification card, however, because a prison guard said that TDOC's system showed "some kind of Federal jurisdiction order that would not allow the guard to give Jones an Identification Card." (*Id.*) Jones states that "[t]his confirms [his] incarceration was illegal." (*Id.*) Parole Officer Brandon Kelley told Jones that he could not leave the county or the State of Tennessee, which Jones terms "a hostage measure." (*Id.* at PageID# 12, ¶ 29.) Jones concludes that the defendants "committed conspiracy of kidnapping, torture, hostage [*sic*] with the intent to keep [Jones] from an Estate/Trust he inherited in Mississippi." (*Id.* at PageID# 13, ¶ 30.)

### B. Procedural History

Jones filed his complaint against Defendants TDOC, TBOP, DSNF, BCCX, S. Jones, Lineberry, Davidson, and Cassell on April 21, 2020. (Doc. No. 1.) In Count One, Jones alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68, against each defendant. (*Id.*) In Count Two, he asserts claims under 42 U.S.C. § 1983 against each defendant, including violations of the Fourteenth Amendment's Equal Protection Clause. (*Id.*) Jones seeks monetary damages and injunctive relief. (*Id.*)

Cassell answered Jones's complaint. (Doc. Nos. 14, 15.) TDOC, S. Jones, and Lineberry moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) (Doc. No. 25), arguing that TDOC is entitled to Eleventh Amendment sovereign immunity from Jones's claims, that Jones failed to state claims for relief against S. Jones and Lineberry, and that Lineberry is entitled to judicial immunity (Doc. No. 26). The Court granted TDOC, S. Jones, and Lineberry's motion to dismiss on March 8, 2021, finding that: (1) TDOC is entitled to sovereign immunity from Jones's claims for monetary damages and injunctive relief; (2) Jones failed to state plausible RICO claims against S. Jones and Lineberry; (3) Jones's § 1983 equal protection claim against S. Jones is time-barred and would also fail on the merits; (4) Jones failed to state a plausible § 1983 civil conspiracy claim against S. Jones; (5) Lineberry is immune to Jones's claims for damages under § 1983; and (6) Jones failed to state plausible claims for injunctive relief under § 1983 against Lineberry. (Doc. Nos. 45, 48.)

TBOP, DSNF, BCCX, and Davidson filed a separate motion to dismiss arguing that Jones has failed to state any plausible RICO or § 1983 claims against them and that TBOP, DSNF, and BCCX are also entitled to Eleventh Amendment sovereign immunity. (Doc. Nos. 40, 41.) Jones has responded in opposition, arguing that TBOP, DSNF, and BCCX are not entitled to sovereign immunity and that his complaint adequately states claims for relief under RICO and § 1983. (Doc. No. 43.) The defendants did not file an optional reply.

After responding in opposition to the motion to dismiss, Jones filed a motion for leave to amend his complaint under Rule 15(a)(2) and a proposed amended complaint. (Doc. Nos. 46, 47.) His proposed amended complaint adds claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b)(1), 2671–80, against each defendant, includes additional factual allegations and exhibits, and continues to seek monetary damages and injunctive relief. (Doc. No. 47.) TBOP,

DSNF, BCCX, and Davidson opposed Jones's motion to amend, arguing that the Court lacks subject-matter jurisdiction over Jones's claims against TBOP, DSNF, and BCCX and that Jones's proposed amendments are futile because they would not survive a motion to dismiss under Rule 12(b)(6). (Doc. No. 54.) Jones filed an untimely reply.[3] (Doc. No. 55.) Cassell has not opposed Jones's motion for leave to amend.[4]

## II. Legal Standards

### A. Motion to Amend Under Rule 15

Federal Rule of Civil Procedure 15(a)(2) provides that district courts should "freely" grant a motion for leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). This "mandate" flows from the principle that a plaintiff "ought to be afforded an opportunity to test [their] claim on the merits" where "the underlying facts or circumstances relied upon . . . may be a proper subject of relief . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, absent "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the

---

[3] The Court's May 4, 2021 order provided that "Jones may file an optional reply within seven days of being served with any response in opposition to his motion [to amend]." (Doc. No. 53, PageID# 316.) TBOP, DSNF, BCCX, and Davidson served their response in opposition on Jones by mail on May 18, 2021. (Doc. No. 54.) Under the Court's order and Federal Rule of Civil Procedure 6(d), which adds three days to a response period when service is made by mail, Jones's reply was therefore due on May 28, 2021. Fed. R. Civ. P. 6(d). Jones did not file his reply until June 1, 2021. (Doc. No. 55.) His reply is therefore untimely and will not be considered.

[4] In its March 8, 2021 order granting TDOC, S. Jones, and Lineberry's motion to dismiss, the Court construed Jones's filings as a motion to amend and denied that motion without prejudice. (Doc. No. 48.) The Magistrate Judge erroneously entered a later order again construing Jones's filings as a motion to amend and ordering the defendants to respond to it. (Doc. No. 53.) All remaining defendants except Cassell filed a response in opposition. (Doc. No. 54.) The Magistrate Judge finds that, having given the parties conflicting orders, the just and speedy course of action is to consider Jones's motion and the defendants' response on their merits. *See* Fed. R. Civ. P. 1. For the reasons set out in this Report and Recommendation, the Magistrate Judge will recommend that the motion to amend be denied with respect to all defendants but Cassell, who answered the original complaint and did not oppose the amended pleading.

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.— the leave sought should, as the rules require, be 'freely given.'" *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (quoting *Foman*, 371 U.S. at 182). A proposed amendment is futile when it would not survive a motion to dismiss under Rule 12(b)(6). *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). "A district court's order denying a Rule 15(a) motion to amend is usually reviewed for an abuse of discretion." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *but see id.* (reviewing *de novo* district court's denial of "motion for leave to amend on the basis of futility"). Nevertheless, Sixth Circuit case law "'manifests "liberality in allowing amendments to a complaint."'" *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015) (quoting *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987)).

### B. Motion to Dismiss Under Rule 12(b)(1)

Federal courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Article III of the Constitution extends the federal judicial power "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States," and several other categories of cases not at issue here.[5] U.S. Const. art. III, § 2, cl. 1; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Congress has also granted federal courts diversity jurisdiction over civil actions in which the parties are citizens of

---

[5] For example, cases involving ambassadors, public ministers, and consuls and cases between two states or in which the United States is a party. U.S. Const. art. III, § 2, cl. 1.

different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. Whether the Court has subject-matter jurisdiction is a "threshold" question in any action. *Am. Telecom Co. v. Republic of Leb.*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "'[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

The party asserting subject-matter jurisdiction bears the burden of establishing that it exists. *Id.* at 104. A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 816–17 (6th Cir. 2017) (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). A factual attack challenges the allegations supporting jurisdiction, raising "a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Id.* at 817 (quoting *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330). District courts reviewing factual attacks have "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

### C. Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the

8
Case 3:20-cv-00340   Document 56   Filed 06/07/21   Page 8 of 20 PageID #: 340

plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Jones proceeds pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

9
Case 3:20-cv-00340 Document 56 Filed 06/07/21 Page 9 of 20 PageID #: 341

### III. Analysis

#### A. The Court's Jurisdiction Over Jones's Claims Against TBOP, DSNF, and BCCX

The Eleventh Amendment "is a true jurisdictional bar that . . . , once raised as a jurisdictional defect, must be decided before the merits." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). The Court therefore must address whether it has jurisdiction over Jones's claims against TBOP, DSNF, and BCCX as a threshold question. *See id.*; *Am. Telecom Co.*, 501 F.3d at 537.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Sixth Circuit has held that Eleventh Amendment sovereign immunity extends to state agencies, including TBOP and TDOC facilities like DSNF and BCCX. *See Frazier v. Crump*, No. 16-6687, 2017 WL 5664900, at *2 (6th Cir. Oct. 17, 2017) (holding that "[t]he Eleventh Amendment bars [plaintiff's] § 1983 claims against the Tennessee Board of Parole, a state agency"); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 454 (6th Cir. 2012) (holding that "[TDOC] and the prisons under its control are agencies of the state of Tennessee and are entitled to Eleventh Amendment immunity from suit for damages" (first citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); and then citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984))).

"There are three exceptions to a state's sovereign immunity: (1) when the state has consented to suit; (2) when the exception set forth in *Ex parte Young*, 209 U.S. 123 (1908) applies; and (3) when Congress has clearly and expressly abrogated the state's immunity." *Puckett v.*

*Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016). The Court finds that none of these exceptions applies to Jones's claims against TBOP, DSNF, and BCCX.

### 1. State Waiver of Sovereign Immunity

As the Court explained when it granted TDOC's motion to dismiss on sovereign immunity grounds, the Tennessee Constitution provides that Tennessee has sovereign immunity from claims brought against it unless the State Legislature expressly waives that immunity. Tenn. Const. art. 1, § 17. The State Legislature codified this provision in Tenn. Code Ann. § 20-13-102, which bars suits against the State of Tennessee in both state and federal court unless the State Legislature has expressly waived that immunity. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986); *Woolsey v. Hunt*, 932 F.2d 555, 565 (6th Cir. 1991). The Sixth Circuit has held that Tennessee has not waived its immunity to claims brought under § 1983. *See Berndt*, 796 F.2d at 881. Jones has not cited any authority indicating that Tennessee has waived its immunity to RICO claims, and this Court is not aware of any such waiver.

### 2. Congressional Abrogation of Sovereign Immunity

"Section 5 of the Fourteenth Amendment . . . grant[s] Congress the authority to abrogate the States' sovereign immunity." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000). A federal statute may abrogate the states' sovereign immunity if "Congress unequivocally expressed its intent to abrogate that immunity" while "act[ing] pursuant to a valid grant of constitutional authority." *Id.* at 73. The Supreme Court has held that § 1983 did not abrogate states' immunity to suits brought under it. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–67 (1989); *see also Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). The Sixth Circuit has held that Congress did not abrogate states' sovereign immunity under RICO. *See Chaz Constr., LLC v. Codell*, 137 F. App'x 735, 743 (6th Cir. 2005) (holding that "RICO does not arise under § 5 of the Fourteenth Amendment" and thus is not a "law wherein Congress abrogated state sovereign immunity"); *see*

*also Bair v. Krug*, 853 F.2d 672, 674–75 (9th Cir. 1988) (holding that appellants had not argued or proffered any authority to support finding that Congress abrogated states' sovereign immunity under RICO).

### 3. *Ex Parte Young* Exception

The *Ex Parte Young* exception allows suits for prospective injunctive relief against state officials acting in violation of federal law. *See Boler*, 865 F.3d at 412 (quoting *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)). While Jones's complaint requests injunctive relief (Doc. No. 1), the *Ex Parte Young* exception applies only to suits against state officials in their official capacities and "does not allow plaintiffs to bring claims against states or state agencies themselves." *Brennan v. Mays*, No. 3:19-cv-00948, 2020 WL 6900138, at *3 (M.D. Tenn. Nov. 23, 2020) (Crenshaw, C.J.) (citing *Puckett*, 833 F.3d at 598); *see also Graham*, 473 U.S. at 167 n.14 ("Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought.").

TBOP, DSNF, and BCCX are therefore entitled to Eleventh Amendment sovereign immunity from the claims in Jones's complaint. None of the cases Jones cites in opposition provides otherwise. As the Court previously explained in granting TDOC, S. Jones, and Lineberry's motion to dismiss, the plaintiff in *Abriq v. Hall* brought § 1983 claims against the Metropolitan Government of Nashville and Davidson County, Tennessee, not TBOP, TDOC, or TDOC facilities like DSNF and BCCX. *Abriq*, 295 F. Supp. 3d at 877. The Supreme Court has held that Eleventh Amendment sovereign immunity "does not extend to counties and similar municipal corporations." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). The *Abriq* case therefore only addressed immunity under the Tennessee Governmental Tort Liability Act and not the Eleventh Amendment. *See Abriq*, 295 F. Supp. 3d at 883. Jones again cites *Vick v. Core Civic*, No. 1:18-cv-00003, 2020 WL 1670742, at *2 (M.D. Tenn. Mar. 6,

2020), *report and recommendation adopted by* 2020 WL 1666598 (M.D. Tenn. Apr. 3, 2020). But, again, *Vick* does not support Jones's argument against the defendants' assertion of sovereign immunity in this case. *See Vick*, 2020 WL 1670742, at *2 (finding that TDOC was entitled to Eleventh Amendment sovereign immunity from plaintiff's § 1983 claims and granting TDOC's motion to dismiss).

Nothing in Jones's proposed amended complaint changes the Court's finding that TBOP, DSNF, and BCCX are entitled to sovereign immunity in this action. Jones proposes adding FTCA claims against these and other defendants, but the FTCA only provides a cause of action for injuries caused by federal employees acting within the scope of their employment. *See* 28 U.S.C. § 1346(b)(1); *Brownback v. King*, 141 S. Ct. 740, 745–46 (2021). TBOP, DSNF, and BCCX are all state agencies entitled to Eleventh Amendment sovereign immunity from Jones's claims. The Court should therefore dismiss TBOP, DSNF, and BCCX as defendants in this action.

### B. Jones's Motion to Amend and Proposed Amended Complaint

Jones's proposed amended complaint adds FTCA claims against all of the defendants named in his original complaint and includes additional factual allegations and exhibits. (Doc. No. 47.) Cassell has not opposed Jones's motion to amend. TBOP, DSNF, BCCX and Davidson oppose Jones's motion, arguing that the Court should deny leave to amend because it lacks jurisdiction over the proposed amended claims against TBOP, DSNF, and BCCX and because Jones's proposed amended claims against Davidson are futile. (Doc. No. 54.)

The Court has already found that TDOC, TBOP, DSNF, and BCCX are entitled to sovereign immunity; Jones's motion for leave to amend should therefore be denied with respect to his claims against these institutional defendants. Jones's motion for leave to amend should also be denied with respect to S. Jones and Lineberry, who have been dismissed from this case because Jones failed to state any plausible claims against them in his original complaint. (Doc. Nos. 45,

13
Case 3:20-cv-00340 Document 56 Filed 06/07/21 Page 13 of 20 PageID #: 345

48.) However, because Cassell has not opposed Jones's motion, the Court should grant Jones's motion for leave to amend as unopposed with respect to his claims against Cassell.[6] *See* M.D. Tenn. R. 7.01(a)(3) (response) ("If a timely response is not filed, the motion shall be deemed to be unopposed[.]").

The only questions remaining regarding Jones's motion for leave to amend is whether or not his proposed amended claims against Davidson under RICO, § 1983, and the FTCA are futile.

### 1. Jones's Proposed RICO Claim Against Davidson

RICO imposes criminal and civil liability on "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). RICO defines "racketeering activity" to include, among other things, "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . , which is chargeable under State law and punishable by imprisonment for more than one year[.]" 18 U.S.C. § 1961(1)(A). "A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years of each other." *Heinrich*, 668 F.3d at 409 (citing 18 U.S.C. § 1961(5)). It also requires a showing "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal

---

[6] Jones paid the filing fee in this action, and the Court therefore does not have an obligation to screen his proposed amended complaint under 28 U.S.C. § 1915(e)(2)(B).

activity." *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). To plausibly state a RICO conspiracy claim, "plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging 'the existence of an illicit agreement to violate the substantive RICO provision.'" *Heinrich*, 668 F.3d at 411 (quoting *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)).

Jones's proposed amended complaint alleges that each defendant "has committed acts . . . that violate one or more of the RICO statutes, and . . . worked in collusion with one or more of the others[.]" (Doc. No. 47, PageID# 224, ¶ 11.) Davidson argues that Jones's proposed amended RICO claim fails on the merits because Jones has not adequately alleged a pattern of racketeering activity. (Doc. No. 54.) Specifically, Davidson argues that, even assuming Jones's arrest, transportation, and incarceration constitute kidnapping under Tennessee law, he "has not shown the presence of two or more instances of kidnapping that would constitute predicate offenses needed under the first element of a RICO claim." (*Id.* at PageID# 322.) The only specific allegation regarding Davidson's conduct in Jones's proposed amended complaint is the same allegation contained in Jones's original complaint—that Davidson gave Jones "the supposed[ ] violation warrant documentation[ ] . . . before the first parole violation hearing back in 2018[,]" but "it was not the actual parole violation warrant in itself." (Doc. No. 47, PageID# 232, ¶ 41.) The Court therefore finds that, liberally construed, Jones's amended complaint does not state a plausible RICO violation or RICO conspiracy claim against Davidson. *See Heinrich*, 668 F.3d at 409, 411. Jones's proposed amended RICO claim against Davidson is therefore futile.

### 2. Jones's Proposed § 1983 Claim Against Davidson

Section 1983 provides a civil cause of action to any person deprived of federal rights by a person acting under color of state law. 42 U.S.C. § 1983. "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured

15
Case 3:20-cv-00340   Document 56   Filed 06/07/21   Page 15 of 20 PageID #: 347

by the Constitution or laws of the United States." *Green v. Throckmorton*, 681 F.3d 853, 859–60 (6th Cir. 2012) (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358–59 (6th Cir. 2001)). Jones's proposed amended complaint alleges that the "[d]efendants' conduct violated [his] rights . . . secured by the Constitution and laws of the United States, including equal protection." (Doc. No. 47, PageID# 235, ¶ 50.) He also repeatedly alleges that the defendants conspired against him. (Doc. No. 47.) The Court therefore construes Jones's § 1983 claims against Davidson as equal protection and conspiracy claims. Davidson argues that Jones's amended complaint does not allege sufficient facts to state a plausible § 1983 claim and, even if it did, that the claim would be barred by the relevant statute of limitations. (Doc. No. 54.)

The Equal Protection Clause applies to states and requires "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996) (quoting *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)); *see also McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (holding that a plaintiff alleging "an equal protection violation has the burden of proving 'the existence of purposeful discrimination'" (quoting *Whitus v. Georgia*, 385 U.S. 545, 550 (1967)).

Again, Jones's only specific allegation against Davidson in the proposed amended complaint is that Davidson provided Jones with parole violation warrant documents in 2018 that did not include the parole violation warrant itself. (Doc. No. 47.) Jones generally alleges that "[t]his . . . is an action of racial discrimination" (*id.* at PageID# 220), but he has not pleaded any facts regarding his race or membership in a protected class. His allegation of racial discrimination

is therefore conclusory and insufficient to support a reasonable inference that Davidson intentionally discriminated against Jones in violation of the Equal Protection Clause. Jones's proposed amended § 1983 equal protection claim against Davidson is therefore futile.

The Sixth Circuit has held that "[a] claim for civil conspiracy under § 1983 exists only where the plaintiff has established a separate and actionable constitutional injury." *Rapp v. Dutcher*, 557 F. App'x 444, 450 (6th Cir. 2014); *cf. Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 769 (6th Cir. 2012) ("[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort." (quoting *Early Detection Ctr., P.C. v. N.Y. Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986))). Because Jones has not adequately alleged a separate constitutional violation against Davidson, his § 1983 conspiracy claim against Davidson is also futile.

Further, even if Jones's proposed amended complaint did state plausible § 1983 claims against Davidson, those claims would be barred by the applicable statute of limitations. "The statute of limitations is an affirmative defense, and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim[.]" *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (first citing Fed. R. Civ. P. 8(c); then citing Fed. R. Civ. P. 8(a); and then citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). Consequently, "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Id.* There is an exception to this general rule, however, when "the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case, . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Id.* (citing *Jones*, 549 U.S. at 215).

"The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631,634 (6th Cir. 2007). In Tennessee, the applicable limitations period is one year. *See id.*; *see also* Tenn. Code Ann. § 28-3-104(a)(1). "The date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson*, 510 F.3d at 635. Generally, "the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* In determining when a § 1983 claim accrues, courts look to "'what event should have alerted the typical lay person to protect his or her rights.'" *Id.* (quoting *Kuhnle Bros. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)).

Jones's proposed amended complaint alleges that, in or around February 2019, he "carefully reviewed the supposed[ ] violation warrant documentation[ ] given to [him] by . . . Davidson before the first parole violation hearing back in 2018" and discovered that the documents did not include "the actual parole violation warrant in itself." (Doc. No. 47, PageID# 232, ¶ 41.) This discovery led him to believe that S. Jones "initiated a bogus parole violation report through fraudulent [and] forged police official documents." (*Id.*) The Court therefore finds that Jones's proposed § 1983 equal protection claim against Davidson accrued no later than March 1, 2018, the date of Jones's first parole violation hearing when he had received the documents from Davidson and had reason to know they did not contain the parole violation warrant. The statute of limitations therefore expired on March 1, 2019, and Jones did not initiate this action until April 21, 2020 (Doc. No. 1). The Court would reach the same conclusion if it were to find that Jones's proposed amended § 1983 equal protection claim against Davidson did not accrue until February 2019.

Jones's proposed amended § 1983 claims against Davidson are therefore time barred and would not survive a motion to dismiss under Rule 12(b)(6).

### 3. Jones's Proposed FTCA Claim Against Davidson

Jones's proposed amended complaint broadly alleges that the "[d]efendants' conduct violated the Federal Tort Claims Act." (Doc. No. 47, PageID# 235, ¶ 55.) As Davidson points out, the FTCA only provides a cause of action for injuries caused by federal employees acting within the scope of their employment. *See* 28 U.S.C. § 1346(b)(1); *Brownback*, 141 S. Ct. at 745–46. Jones's proposed amended complaint asserts that the FTCA "permits private parties to sue the United States in federal court for torts . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" (Doc. No. 47, PageID# 219.) But Jones has not alleged any facts sufficient to support a reasonable inference that Davidson is a federal employee. Consequently, Jones's proposed amended FTCA claim against Davidson is futile.

The Court therefore finds that Jones's motion for leave to amend should be denied with respect to all of Jones's proposed amended claims against Davidson.

### C. Davidson's Motion to Dismiss Jones's Original Complaint

Davidson has also moved to dismiss Jones's RICO and § 1983 claims in the original complaint, arguing that the allegations in Jones's original complaint fail to state plausible RICO and § 1983 claims against Davidson for the same reasons that Jones's proposed amended RICO and § 1983 claims against Davidson are futile. (Doc. No. 41.) The Court finds that Jones's allegations against Davidson in the original complaint are identical to his allegations against Davidson in the proposed amended complaint. Consequently, for the same reasons explained above, Jones's original complaint fails to state a plausible RICO, § 1983 equal-protection, or § 1983 conspiracy claim against Davidson. These claims should therefore be dismissed.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that TBOP, DSNF, BCCX and Davidson's motion to dismiss (Doc. No. 40) be GRANTED and that Jones's motion to amend (Doc. No. 46) be DENIED IN PART AND GRANTED IN PART. The motion to amend should be denied with respect to Jones's claims against TDOC, TBOP, DSNF, BCCX, S. Jones, Lineberry, and Davidson and granted as unopposed with respect to Jones's claims against Cassell.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 7th day of June, 2021.

ALISTAIR E. NEWBERN
United States Magistrate Judge